UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROCHELLE M. JONES and JAMES L. THOMAS,

                          Plaintiffs,

v.

Case # 16-CV-234-FPG

DECISION AND ORDER

CRISIS SERVICES OF ERIE COUNTY,
"SHERRY W.," "MANDY M.," "R.G.,"
JULIAN HARRIS, MYLINDA MCCREADY,[1]
ERIE COUNTY MEDICAL CENTER,
RICARDO ROMERO, M.D., WON HOON PARK,
M.D., ALFONSO TAN, M.D., BUFFALO POLICE
DEPARTMENT, BUFFALO POLICE OFFICER
JOHN DOE 1, BUFFLO POLICE OFFICER
JOHN DOE 2,

                          Defendants.

## INTRODUCTION

On March 21, 2016, Plaintiffs Rochelle M. Jones and James L. Thomas filed a Complaint alleging various claims against Defendants stemming from Jones's involuntary commitment at Erie County Medical Center (ECMC) under New York's Mental Hygiene Law (MHL). *See* ECF No. 1.

Nearly two months later, on May 5, 2016, Plaintiffs filed an Amended Complaint. ECF No. 3. Plaintiffs never served the original Complaint on any of the Defendants before filing the Amended Complaint. The Amended Complaint alleged facts similar to the original Complaint and eleven claims: (1) Defendants Crisis Services of Erie County (CSEC), Sherry W., Mandy M., R.G., and Julian Harris conspired to deprive Jones of her civil rights in violation of 42 U.S.C. § 1985(3); (2) CSEC, Sherry W., Mandy M., R.G., Harris, and Buffalo Police Officers John Doe 1 and 2 violated Jones's Fourth Amendment rights in turn violating 42 U.S.C. § 1983; (3) CSEC,

---

[1] The Court notes that Plaintiffs named Mylinda "McCready" as a Defendant in their suit. *See* ECF No. 3. Based on McCrady's Motion to Dismiss, however, her last name is "McCrady" and contains no "e." *See* ECF No. 41.

Sherry W., Mandy M., R.G., Harris, Buffalo Police Officers John Doe 1 and 2, Ricardo Romero, M.D., Won Hoon Park, M.D., and Alfonso Tan, M.D., violated Jones's due process rights guaranteed under the Fourteenth Amendment, also violating § 1983; (4) CSEC, Sherry W., Mandy M., R.G., Harris, Buffalo Police Officers John Doe 1 and 2, Drs. Romero, Park, and Tan falsely arrested and imprisoned Jones; (5) CSEC, Sherry W., Mandy M., R.G., Harris, Buffalo Police Officers John Doe 1 and 2, and Drs. Romero, Park, and Tan violated the MHL; (6) Drs. Romero, Park, and Tan (the Physicians) and ECMC committed medical malpractice while treating Jones; (7) the Physicians and ECMC failed to receive informed consent from Jones for treatments they administered to her; (8) Harris and Mylinda McCrady defamed Jones; (9) Harris intentionally inflicted emotional distress upon Jones; (10) Harris defamed Thomas; and (11) a derivative spousal claim on Thomas's behalf against all Defendants. *See* ECF No. 3.

Thereafter, Harris, McCrady, ECMC and the Physicians moved to dismiss the Amended Complaint. ECF Nos. 5, 8, 26, 41, 74. These motions are currently before the Court.

Additionally, in December of 2017, Plaintiffs moved to proceed in forma pauperis, for appointment of counsel, and for other miscellaneous relief. *See* ECF Nos. 60-61. Because the Court has since appointed an attorney to represent Plaintiffs, *see* ECF No. 62, these motions are DENIED.

## BACKGROUND[2]

On March 21, 2015, Harris contacted CSEC, told representatives that he was Jones's son and was concerned for her safety, and requested that CSEC send an outreach team to conduct a mental health evaluation of Jones. ECF No. 3 ¶¶ 38-41. He specifically noted that he was "not sure" if Jones was suicidal or a danger to herself, and that he believed Jones was not sleeping because she was posting on Facebook throughout the night. ECF No. 3 ¶ 42. In some of the posts,

---

[2] The Court takes the following allegations from the Amended Complaint, ECF No. 3, and accepts them as true. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Jones said she thought she was Harriet Tubman and Moses. *Id.* ¶ 46. He also noted that Jones and Thomas were living separately "due to drug abuse issues," a statement that Harris allegedly knew was false. *Id.* ¶ 43.

At the time, Harris was living in Washington, D.C., and was studying to receive a masters' degree in social work. *Id.* ¶ 39. Consequently, he was familiar with the standards governing emergency mental health admissions, including those under the MHL. *Id.*

At approximately 3:45 p.m. the same day, Sherry W. and Mandy M., CSEC employees, traveled to Jones's home. *Id.* ¶ 45. They explained what Harris told them and why they were there. *Id.* ¶ 46. Jones allowed Sherry and Mandy to view her Facebook page, which did not contain the post Harris described. *Id.* ¶ 47. Later in their conversation, Jones began to discuss historical African-American figures with Sherry and Mandy. *Id.* ¶ 53. Sherry was visibly angered by the conversation, which Jones attributed to prejudice and lack of cultural sensitivity and awareness. *Id.* ¶ 56-57. After approximately twenty minutes, Sherry and Mandy left Jones's home. *Id.* ¶¶ 48-49.

After Sherry left Jones's home, she called Harris and discussed the encounter with him. *Id.* ¶ 59. Harris and Sherry agreed that he would monitor Jones's behaviors and would contact CSEC if a second evaluation was needed. *Id.* ¶ 60.

The evening of March 21, Jones's dog was euthanized because of ongoing health problems. *Id.* ¶ 64. Jones asked Thomas to stay with her for support. *Id.* ¶¶ 66-67.

Later that evening, Harris again contacted CSEC. *Id.* ¶ 71. During his call, he claimed that Jones euthanized her dog, said she was Harriet Tubman, and was spending time with Thomas, who is "evil." *Id.*

The next day, March 22, 2015, McCrady contacted Jones. ECF No. 3 ¶ 73. During the call, Jones told McCrady that Harris called CSEC on her. *Id.* ¶ 78. Jones asked McCrady to call

3

Harris and ask him why he contacted CSEC. *Id.* When McCrady contacted Harris, they "apparently" agreed to have Jones removed from her home and hospitalized under the MHL. *Id.* ¶ 79.

Later that day, Harris contacted CSEC again. *Id.* During his call, he told the CSEC representative that he sent a friend to check on Jones, the friend described her as "paranoid," and the friend heard her say that her daughter was coming to her house to kill her, so she would have to kill her daughter first. *Id.* ¶ 83. Additionally, Harris said that Thomas was a drug user and was staying with Jones, and that Jones was a lawyer who had not worked for some time. *Id.* Jones alleges that these statements were false and Harris knew they were false. *Id.* ¶ 84.

At approximately 2:00 p.m. on March 22, 2015, Sherry and R.G. from CSEC arrived at Jones's home with five police officers. *Id.* ¶¶ 87-88. Jones was then involuntarily transported by ambulance to ECMC under the MHL. *Id.* ¶¶ 122-24.

Jones arrived at ECMC at approximately 5:00 p.m. *See id.* ¶ 131. Jones informed ECMC staff that she was a diabetic; despite this, she was not given water, food, or medication for nearly twenty-four hours. *Id.* ¶¶ 138, 147, 155.

Later that evening, ECMC employees contacted Harris. *Id.* ¶ 156. Harris explained that Jones was not sleeping properly, was fearful and paranoid, believed that her daughter was going to kill her, had been "drinking a lot lately," and was taking medication prescribed for her late dog. *Id.* Jones alleged that these statements were false, Harris knew they were false, and Harris made them to cause ECMC to admit her for psychiatric treatment. *Id.* ¶¶ 157-58.

Dr. Romero examined Jones at approximately midnight on March 22. ECF No. 3 ¶ 163. At that time, Jones was fearful and had not received appropriate food, water, or medication for over eight hours. *Id.* ¶¶ 164-65. Despite these conditions, Dr. Romero concluded that Jones needed inpatient psychiatric stabilization. *Id.* ¶ 166.

4

Dr. Park examined Jones on March 23. *Id.* ¶ 167. He reviewed Harris's statements and found them to be credible without basis. *Id.* ¶ 168. Dr. Park also did not believe that Jones was a lawyer and considered the assertion that she was a lawyer evidence that her sense of reality was markedly impaired. *Id.* ¶¶ 169-70. Based on this information, he diagnosed Jones with "psychotic disorder not otherwise specified" and prescribed antipsychotic medications. *Id.* ¶ 171.

On March 24, ECMC employees began administering the medications Dr. Park prescribed to Jones. *Id.* ¶ 174. Jones did not give informed consent to the administration of the medications and one medication, Haldol, was given to Jones against her will without a court order. *Id.* ¶¶ 175-79.

Nearly a week later, on March 31, Jones began the process of challenging her commitment at ECMC. *Id.* ¶ 191. Dr. Tan told Jones that if she challenged her commitment, he would "go after" Jones's law license. *Id.* ¶ 192. Dr. Tan also said that Jones had "Sundowner's disease" and certified that Jones required seven additional days of hospitalization. *Id.* ¶¶ 194-95.

Additionally, Dr. Tan prescribed medication to Jones that caused her to "emit a noise similar to someone with Tourette's Syndrome" and her face to twitch. *Id.* ¶ 203. Dr. Tan also diagnosed Jones with bi-polar disease and prescribed her Depakote and Risperidol. *Id.* ¶¶ 205, 211. The Depakote and Haldol—the latter prescribed by Dr. Park—caused Jones's legs to swell, resulting in permanent damage to her knees and lower back. *Id.* ¶ 214. Jones's complaints regarding pain were ignored. *Id.* ¶ 215.

The Physicians and ECMC did not explain the risks, hazards, and effects of the medications that were administered to her and did not allow her to refuse the medications. ECF No. 3 ¶¶ 220-21.

On April 6, 2015, Jones was released from ECMC. *Id.* ¶ 222.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.").

It is well established that the Court must construe pro se submissions liberally and read them "to raise the strongest arguments that they suggest." *Nicholas v. City of New York*, No. 15-CV-9592 (JPO), 2017 WL 2537293, at *2 (S.D.N.Y. June 12, 2017) (quoting *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003)). Those principles apply, without question, to McCrady's Motion, since she has proceeded pro se for the entirety of the case. They do not apply, however, to Plaintiffs' Amended Complaint, even though it was filed pro se. Courts within the Second Circuit have declined to liberally construe pleadings of seasoned, licensed attorneys proceeding pro se. *Chira v. Columbia Univ.*, 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003). Jones is both licensed

6

to practice law in New York and a seasoned attorney before this Court.[3] Consequently, the Court will not construe the Amended Complaint liberally.

With these principles in mind, the Court now turns to a threshold issue it must consider before evaluating the Motions to Dismiss: whether Plaintiffs' Amended Complaint is a "legal nullity" as argued by ECMC and the Physicians.

## DISCUSSION

### I.  The Amended Complaint Is Not a Legal Nullity

ECMC and the Physicians argue that the Amended Complaint is a "legal nullity" because Plaintiffs failed to follow the requirements for amending the original Complaint as outlined in Rule 15. *See* ECF Nos. 5-4, 8-2, 26-3. Specifically, they argue that Plaintiffs did not seek leave from Defendants or the Court to amend the Complaint under Rule 15(a)(2), and Plaintiffs were not entitled to amend the Complaint as of right under Rule 15(a)(1) because they never served the original Complaint and filed the Amended Complaint before Defendants filed their responsive pleadings. *Id.*

The Court agrees that Plaintiffs violated Rule 15; however, the Court declines to strike the Amended Complaint for two reasons. First, Defendants litigated the case for over two years with the Amended Complaint as the operative pleading. They have filed motions to dismiss, allowed Plaintiffs to respond, filed replies, and answered the counterclaims brought by other Defendants, all based on the Amended Complaint. *See* ECF Nos. 5, 8, 10, 12, 20-21, 24, 26, 31-32, 35. Moreover, Defendants did not object when Plaintiffs moved to appoint counsel and sought other forms of relief ruled upon by the Court. *See* ECF Nos. 34, 42, 49, 50-53, 56-57, 60-62. Based on this long history of litigation with no objections by Defendants, other than those raised in their

---

[3] Jones is listed in the Attorney Directory maintained by the New York State Unified Court System as "currently registered" and her next registration date is February 2020. Additionally, Jones has represented litigants in five cases before this Court. *See* Case Nos. 02-CV-248, 04-CV-87, 05-CV-91, 05-CV-9, 07-CV-19.

7

pending Motions, Defendants appear to indicate "an intent to litigate the merits of the [A]mended [C]omplaint" and consent to Plaintiffs' use of more time to file the Amended Complaint. *Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15-cv-4821 (ADS)(AKT), 2016 WL 4536873, at *7 (E.D.N.Y. Aug. 30, 2016).

Second, "Defendants point to no prejudice or any other ground on which the Court would have denied the Plaintiff[s] leave to amend had they requested it under Rule 15(a)(2)." *Cincotta*, 2016 WL 4536873, at *7 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) ("Undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party or futility of amendment will serve to prevent an amendment prior to trial." (alterations and quotation marks omitted)). Consequently, the Amended Complaint is not a legal nullity and is the operative pleading in this action. The Court next evaluates the Motions to Dismiss.

## II. The Eighth Claim Is Dismissed as to McCrady

In her Motion, McCrady, proceeding pro se, stated that service was insufficient and that there are no satisfactory causes of action against her. *See* ECF No. 41 ¶¶ 4, 6. The Court, therefore, interprets McCrady's Motion as one to dismiss under Rules 12(b)(5)-(6).

First, the Court notes that it granted Plaintiffs an extension of time under Rule 4(m) to serve McCrady by August 15, 2016, which they did. *See* ECF Nos. 38, 49. Consequently, McCrady's Motion to Dismiss the Amended Complaint under Rule 12(b)(5) is DENIED AS MOOT. Her Motion to Dismiss under Rule 12(b)(6), however, is GRANTED as to the Eighth Claim, which alleges that McCrady defamed Jones.

To state a claim for defamation, a plaintiff must allege a "false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a

negligence standard, and it must either cause special harm or constitute defamation per se." *Arvanitakis v. Lester*, 44 N.Y.S.3d 71, 72 (2d Dep't 2016) (quoting *Salvatore v. Kumar*, 845 N.Y.S.2d 384, 389 (2d Dep't 2007)) (quotation marks omitted). "The complaint must set forth the particular words allegedly constituting defamation and it must also allege the time, place, and manner of the false statement and specify to whom it was made." *Id.* at 72-73 (citations omitted); *see also* N.Y. C.P.L.R. 3016(a).

Here, the Amended Complaint contains no particular words allegedly stated by McCrady. It alleges only that McCrady spoke with Jones and Harris on the phone, that McCrady "apparently" conspired with Harris to have Jones removed from her home, and that McCrady called CSEC and "knowingly provided false information[.]" ECF No. 3 ¶¶ 73, 78-81, 254. Accordingly, McCrady's Motion to Dismiss under Rule 12(b)(6) is GRANTED, and the Eighth Claim, the only Claim naming McCrady, is DISMISSED as to her.

### III. The Fifth Claim Is Dismissed with Prejudice as to All Defendants

The Physicians and Harris move to dismiss Plaintiffs' Fifth Claim with prejudice because there is no private right of action under the MHL. ECF Nos. 8-2 at 13, 26-3 at 11-12, 74 at 13. Plaintiffs did not respond to Defendants argument. Even if they had, however, it is clear that Defendants are correct: there is no private right of action under the MHL. *Lombardo v. Freebern*, No. 16-CV-7146 (KMK), 2018 WL 1627274, at *7 (S.D.N.Y. Mar. 30, 2018) (finding that the MHL is a regulatory statute under which no private right of action exists for violations of its terms). Consequently, Plaintiffs' Fifth Claim is DISMISSED WITH PREJUDICE as to all Defendants.

9

### IV. Plaintiffs' Claims Against the Physicians

The Physicians move to dismiss Plaintiffs' Third, Fourth, Sixth, and Seventh Claims against them.[4] *See* ECF Nos. 8-2, 26-3. The Court addresses each Claim below.

#### A. The Fourth, Sixth, and Seventh Claims Are Dismissed as to the Physicians Because Plaintiffs Abandoned Them

In their Motions, the Physicians argue that the Fourth, Sixth, and Seventh Claims should be dismissed because the Amended Complaint does not properly allege the requisite elements. *See* ECF Nos. 8-2 at 5-6, 26-3 at 13-14.[5] In response, Plaintiffs provide no counterargument in support of these claims. *See* ECF No. 67-1. In fact, while Plaintiffs do argue that they have properly alleged their First, Second, and Third Claims, they do not mention the Fourth, Sixth, and Seventh Claims at all. *Id.* Consequently, the Court finds that Plaintiffs have abandoned the Fourth, Sixth, and Seventh Claims and they are DISMISSED as to the Physicians. *See, e.g.*, *Moreau v. Peterson*, No. 7:14-cv-0201 (NSR), 2015 WL 4272024, at *4 (S.D.N.Y. July 13, 2015) ("Plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of those claims." (alterations, citations, and quotation marks omitted)).

#### B. Plaintiffs' Third Claim Is Dismissed as to the Physicians Because Plaintiffs Do Not Allege That They Are State Actors

Plaintiffs' Third Claim alleges that the Physicians violated § 1983 when they violated Jones's Fourteenth Amendment due process rights by confining her in ECMC's psychiatric unit for seventeen days against her will. *See* ECF No. 3 ¶¶ 232-234. In their Motions, the Physicians argue that Plaintiffs do not allege that they are state actors. *See* ECF Nos. 8-2 at 4, 26-3 at 7-8. In

---

[4] Drs. Romero and Tan move jointly to dismiss the claims against them, while Dr. Park moves separately. *See* ECF Nos. 8-2, 26-3. The Court analyzes the claims against all three jointly because Plaintiffs allege the same claims against them.

[5] It appears that counsel for Drs. Romero and Tan mistakenly filed two copies of the Motion to Dismiss in one document. Consequently, the document is fourteen pages long, but contains two identical copies of the seven-page brief. The Court refers to the first seven pages.

response, Plaintiffs argue that the Physicians' treatment of Jones, including the administration of medications, constitutes state action. *See* ECF No. 67-1 at 9. Additionally, Plaintiffs claim that the jury must determine whether the Physicians are state actors. *Id.* at 11.

To state a claim under § 1983, a plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). As to the second element, a plaintiff must specifically allege that the defendants are state actors. *Kashelkar v. Bluestone*, 306 F. App'x 690, 692 (2d Cir. 2009) (citing *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)) (summary order).

Here, Plaintiffs' Third Claim fails as to the Physicians because they do not allege that the Physicians are state actors or are private actors who worked in concert with the state. Indeed, Plaintiffs allege only that the Physicians are ECMC employees; they do not allege any involvement with the state or that ECMC is a state actor. *See* ECF No. 3 ¶¶ 12-15.

Plaintiffs' counterarguments are unavailing. The medications the Physicians administered are irrelevant; Plaintiffs allege that the Physicians are state actors for a § 1983 claim to lie against them. Plaintiffs have not properly alleged a § 1983 claim against them if she has not alleged that they are state actors. Moreover, the jury may ultimately determine whether the Physicians are state actors. *See Logan v. Bennington College Corp.*, 72 F.3d 1017, 1027 (2d Cir. 1995). At this stage of the litigation, however, Plaintiffs must allege that the Physicians are state actors for their Claim to survive, which they have failed to do. Consequently, Plaintiffs' Third Claim is DISMISSED as to the Physicians. The Court next considers Plaintiffs' claims against ECMC.

## V. Plaintiffs' Sixth and Seventh Claims Are Dismissed as to ECMC Because Plaintiffs Abandoned Them

Plaintiffs allege two claims[6] against ECMC: it committed medical malpractice and failed to secure informed consent from Jones for treatments it administered both in violation of New York law. *See* ECF No. 3 ¶¶ 241-250. ECMC moves to dismiss those Claims. *See* ECF No. 5-4 at 11-13. In response, Plaintiffs make no counterarguments in support of maintaining those claims against ECMC. Consequently, they are DISMISSED. *See, e.g.*, *Moreau*, 2015 WL 4272024, at *4. The Court next weighs Plaintiffs' Claims against Harris.

## VI. Plaintiffs' Claims Against Harris

Plaintiffs allege seven claims against Harris: the First through Fourth Claims and the Eighth through Tenth Claims. The Court analyzes each Claim in turn below.

### A. Plaintiffs' First, Fourth, Ninth, and Tenth Claims Are Dismissed Because Plaintiffs Abandoned Them

In Harris's Motion, argues for dismissal of the First, Fourth, Ninth, and Tenth Claims. *See* ECF No. 74 at 6-15. In response, Plaintiffs make no arguments in support of their Claims. The Court notes that, although Plaintiffs argue in support of the Eighth Claim, a defamation claim on behalf of Jones, they do not argue in support of the Tenth Claim, a defamation claim on behalf of Thomas. *See* ECF No. 74 at 6-15. Plaintiffs, therefore, have abandoned their First, Fourth, Ninth, and Tenth Claims, and those Claims are DISMISSED.

### B. Plaintiffs' Second and Third Claims Are Dismissed Because Plaintiffs Did Not Allege that Harris's Acts Constitute State Action

Harris moves to dismiss Plaintiffs' Second and Third Claims for violations of § 1983 and the Fourth and Fourteenth Amendments because Plaintiffs do not allege that he is a state actor.

---

[6] The First through Fourth Claims allege events that occurred at ECMC, but do not name ECMC as a Defendant.

*See* ECF No. 74 at 12. In response, Plaintiffs argue only that they properly plead allegations to support the Claims against Harris. *See* ECF No. 75 at 4-7.

Here, the Court must dismiss the Second and Third Claims against Harris for three reasons. First, Plaintiffs have not alleged that Harris is a state actor, which, as explained above, is a requirement for § 1983 claims. *See Kashelkar*, 306 F. App'x at 692. Of course, Plaintiffs cannot allege that Harris is a state actor because, at the time, he was not; he was a private citizen and student. *See* ECF No. 3 ¶ 16.

Second, Plaintiffs have not alleged that Harris's actions are "attributable to the state." *See Rice v. City of New York*, 275 F. Supp. 3d 395, 403 (E.D.N.Y. 2017) (quoting *Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257 (2d Cir. 2008)); *see also Staten v. Patrolmen's Benevolent Ass'n of N.Y.C., Inc.*, 282 F. Supp. 3d 734, 740 (S.D.N.Y. 2017) ("The plaintiff . . . has not alleged that [the defendant was] acting as an agent of—or at the direction of—the state or any state actor."). Specifically, Plaintiffs have not plausibly alleged facts to show that Harris's acts are attributable to the state under any of the requisite tests.

> The actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski*, 546 F.3d at 258 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). Plaintiffs did not allege that the state "controlled" or "coerced" Harris; that the state "encouraged" Harris, that he "willfully participated" in its activity, or that he was "entwined" with state polices; or that the state "delegated a public function" to him.

Third, and finally, "private persons . . . who act pursuant to state statutes to commit the mentally ill cannot be held liable under [S]ection 1983." *Harvey v. Harvey*, 949 F.2d 1127, 1133

13

(11th Cir. 1992); *see also Vazquez v. Combs*, No. 04 Civ.4189(GEL), 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation."). In this case, Harris was acting pursuant to the MHL to begin involuntary commitment procedures, acts for which he cannot be held liable under § 1983. Consequently, the Second and Third Claims are DISMISSED as to Harris.

### C. Jones Plausibly Alleged the Eighth Claim Because Harris's Statements Constitute Defamation Per Se

Harris also moves to dismiss Jones's Eighth Claim for defamation. In her Claim, Jones alleges the specific statements Harris made that defamed her: Jones "publicly stated" she was Harriet Tubman, she "seemed paranoid," she intended to kill her daughter, she had been "drinking a lot lately," and she took Xanax prescribed for her late dog. ECF No. 3 ¶ 252. Harris made all of these statements to representatives of CSEC, all the statements were false, and Harris knew they were false. *Id.* ¶¶ 252-53.

Harris makes several arguments in support of his Motion: the statement that Jones "seemed paranoid" is not actionable because it is an opinion; the statements do not constitute defamation per se; Jones is not entitled to special damages because the call to CSEC was private; there is no proximate cause between the statements and Jones's alleged damages; and, the statements made to CSEC were privileged. ECF No. 74 at 6-10. In response, Jones argues that she appropriately alleged each element of her defamation claim, Harris knew the statements would lead to Jones's involuntary committal, which would, in turn, lead to her removal from the Erie County Bar Association's Indigent Prisoners' Panel (the Panel), and that the statements were meant to injure Jones in her profession. ECF No. 75 at 7-8.

14

To state a claim for defamation, a plaintiff must allege four elements: the defendant (1) made a false statement about the plaintiff; (2) published it to a third party without authorization or privilege; (3) with fault amounting to at least negligence; (4) that constitutes defamation per se or causes special damages. *Collins v. Travers Fine Jewels, Inc.*, No. 16-CV-03780 (SN), 2017 WL 1184305, at *2 (S.D.N.Y. Mar. 29, 2017) (citing *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010)).

Statements of pure opinion are not defamatory. *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 516 (S.D.N.Y. 2017) (citing *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 315 (S.D.N.Y. 2017)). A court considers four factors when determining whether a statement is opinion or fact: "(1) whether the specific language at issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) whether the statement is capable of being objectively characterized as true or false; (3) examination of the full context of the communication; and (4) consideration of the broader social context or setting surrounding the communication." *Id.*

Here, considering those four factors, the Court concludes that Harris's statement that Jones "seemed paranoid" is pure opinion and, thus, not actionable. *See Scialdone v. Derosa*, 48 N.Y.S.3d 471, 472-73 (2d Dep't 2017) (finding defendant's statement that plaintiff was a "paranoid pompous ass" non-actionable opinion). Given the context of the statement and the words used, Harris is clearly stating that, *in his view*, Jones appears paranoid. Consequently, the statement is not actionable.[7]

Harris next argues that Jones failed to properly allege the fourth element of her Claim: that she sustained special damages, or that the defamation is defamation per se. ECF No. 74 at 6-8. A

---

[7] Harris makes two additional arguments against Jones's Claim: that she did not establish proximate cause and that Harris's statements were privileged. Both arguments fail because they are unsupported by law. Alleging proximate cause is not required to plausibly state a defamation claim, and there is no existing case law of which the Court is aware stating, or even suggesting, that statements to a mental health crisis center are privileged and not actionable.

plaintiff incurs special damages when she loses something "having economic or pecuniary value" that flows "directly from the injury to reputation caused by the defamation." *Id.* at 164 (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 179 (2d Cir. 2000)) (quotation marks omitted). To adequately plead special damages, a plaintiff must state them "fully and accurately . . . with sufficient particularity to identify actual losses." *Thai*, 726 F. Supp. 2d at 330 (quoting *Matherson v. Marchello*, 473 N.Y.S.2d 998, 1000-01 (2d Dep't 1984)). "The particularity requirement is strictly" enforced. *Id.* (quoting *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 893 N.Y.S.2d 414, 417 (4th Dep't 2009)). "Round figures or a general allegation of a dollar amount will not suffice." *Id.* (quoting *Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997)) (alterations omitted).

Here, Jones fails to allege any dollar amount, which is insufficient to establish special damages. She claims only that she was removed from the Panel, from which she derives "the bulk of her income," and that she suffers from "humiliation, loss of standing in the community, loss of self-esteem, public disgrace and severe and emotional distress" because of Harris's statements. ECF No. 3 ¶¶ 256-59. Consequently, Jones has failed to allege special damages.

"A plaintiff is excused from pleading special damages, however," when she pleads defamation per se, since "the law presumes damages will result" from it. *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 165 (E.D.N.Y. 2014) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)). A plaintiff successfully pleads defamation per se when she alleges statements that (1) charge her with a serious crime; (2) tend to injure her in her trade, business, or profession; (3) claim she has a loathsome disease; or (4) impute unchastity to her. *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011) (citing *Liberman*, 80 N.Y.2d at 435). The first, third, and fourth categories are not at issue in this case, so the Court focuses only on the second: statements that tend to injure a plaintiff in her trade, business, or profession.

16

Statements tend to injure an attorney in her profession when they "show lack of character or a total disregard of professional ethics, for example, statements that indicate an attorney has been disloyal to the best interest of his client or statements that accuse an attorney of unprofessional conduct." *Grayson*, 271 F. Supp. 3d at 518 (quoting *Wilson v. Tarricone*, No. 12 Civ. 5337 (LTS), 2013 WL 12084504, at *4 (S.D.N.Y. Sept. 26, 2013), *aff'd*, 563 F. App'x 864 (2d Cir. 2014) (summary order)).

Outside of that general principle, there are three, seemingly-conflicting principles of law at issue. First, a plaintiff must allege that the statements "referenced her character or conduct in that profession." *Cain v. Esthetique*, 182 F. Supp. 3d 54, 73 (S.D.N.Y. 2016); *see also Weinstock v. Goldstein*, 594 N.Y.S.2d 47, 47 (2d Dep't 1993) ("The allegedly defamatory statements did not address the subject of the plaintiff's ability to practice his profession[.]"). Second, statements may be defamatory if they are spoken "in reference or relation to plaintiff's profession" *and* "were disparaging of [her] mental capacity and competence as a lawyer." *Van Lengen v. Parr*, 525 N.Y.S.2d 100, 100-01 (4th Dep't 1988). Finally, "a false accusation of insanity, mental imbalance, or mental disease, is [defamation] per se under New York law."[8] *Goldwater v. Ginzburg*, 414 F.2d 324, 338 (2d Cir. 1969); *see also O'Brien v. Lerman*, 498 N.Y.S.2d 395, 396 (2d Dep't 1986) (holding that the statement at issue "cannot reasonably be understood by the mind of the ordinary intelligent reader as imputing to plaintiff insanity or mental instability and, thus, do[es] not constitute [defamation] per se").

Here, under the first principle, the statements at issue are not defamation per se because they do not reference Jones's character or conduct in the context of her profession. The same is true for the second principle—the statements were not spoken "in reference or relation" to Jones

---

[8] Admittedly, the quote says "libel per se" and not "defamation" or "slander" per se. The standard for libel per se, however, is nearly identical to the one for defamation per se. *See Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985) ("[I]t is well settled that 'a writing which tends to disparage a person in the way of his office profession or trade' is libelous per se."). Consequently, the Court finds that any statement that is libel per se is defamation per se.

17

as a lawyer; they were spoken to representatives of CSEC in the context of her need for a mental health evaluation. Under the third principle, however, the statements are defamation per se—they are allegedly false accusations of insanity, mental imbalance, or mental disease.

Given this conflict, the Court returns to the original analysis: whether the statements tend to injure Jones in her profession and whether they show lack of character or a total disregard of professional ethics, for example, statements that accuse Jones of unprofessional conduct.

Here, the statements alleged constitute defamation per se. Harris's statements that Jones said she was Harriet Tubman, intended to kill her daughter, consumed large amounts of alcohol, and took medications prescribed for her dog all tend to injure Jones in her profession, show lack of character, and accuse her of unprofessional conduct. Indeed, the statements all strongly suggest that Jones does not have the mental capacity to effectively represent clients in legal matters. Moreover, stating that Jones intended to kill her daughter and consumed medication prescribed for her dog suggest a disregard of professional ethics. Accordingly, the Court finds that Jones has plausibly alleged that the statements constitute defamation per se, thereby plausibly alleging her Eighth Claim for defamation against Harris.

### VII. Plaintiffs' Eleventh Claim, the Derivative Spousal Claim, Is Dismissed as to McCrady, the Physicians, and ECMC

Plaintiffs' allege the Eleventh Claim, a derivative spousal claim, against all Defendants. *See* ECF No. 3 ¶¶ 272-74. It is well established, however, that a spouse's derivative claim fails as to a defendant when the other spouse's principal claims fail. *See Wright v. City of Ithaca*, 633 F. App'x 63, 66 (2d Cir. 2016) (citing *Griffin v. Garratt-Callahan Co.*, 74 F.3d 36, 40 (2d Cir. 1996)). Accordingly, the Eleventh Claim is DISMISSED as to McCrady, the Physicians, and ECMC since all of Plaintiffs' principal claims against those Defendants have been dismissed.

**VIII. Plaintiffs Did Not Properly Move to Amend**

Plaintiffs twice moved for leave to amend the Amended Complaint. *See* ECF Nos. 67-1 at 16-17, 75 at 8-9. Under Local Rule of Civil Procedure 15(a), however, Plaintiffs' Motion is procedurally improper because it does not include a copy of the proposed Second Amended Complaint. Loc. R. Civ. P. 15(b) ("A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion."); *see also Aiola v. Malverne Union Free Sch. Dist.*, 115 F. Supp. 3d 321, 343 (E.D.N.Y. 2015) ("[A] 'bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper[.]"). Consequently, Plaintiffs' Motion for Leave to Amend the Amended Complaint is DENIED.

## CONCLUSION

For the foregoing reasons, the Motions to Dismiss the Amended Complaint by McCrady, the Physicians, and ECMC, ECF Nos. 5, 8, 26, 41 are GRANTED, the Claims naming them are DISMISSED as to them, and the Clerk of Court is directed to terminate them as Defendants in this case. The Motion to Dismiss the Amended Complaint by Harris, ECF No. 74, is GRANTED IN PART, and the First, Second, Third, Fourth, Ninth, and Tenth Claims are DISMISSED as to him. The Court will refer the case to a Magistrate Judge for pretrial proceedings by a separate Order.

The remaining Claims and Defendants are as follows:

The First Claim against CSEC, Sherry W., Mandy M., and R.G.;

The Second Claim against CSEC, Sherry W., Mandy M., R.G., and Buffalo Police Officers John Doe 1 and 2;

The Third Claim against CSEC, Sherry W., Mandy M., R.G., and Buffalo Police Officers John Doe 1 and 2;

The Fourth Claim against CSEC, Sherry W., Mandy M., R.G., and Buffalo Police Officers John Doe 1 and 2;

The Eighth Claim against Harris; and

The Eleventh Claim against Harris, CSEC, Sherry W., Mandy M., R.G., and Buffalo Police Officers John Doe 1 and 2.

Finally, Plaintiffs' Motions for various forms of relief, ECF Nos. 60-61, are DENIED.

IT IS SO ORDERED.

Dated: August 3, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court