UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Rochelle M. Jones and James L. Thomas,

                          Plaintiffs,

v.

Sherry W. *et al.*,

                          Defendants.

**Report and Recommendation**

16-CV-234G

---

## I. INTRODUCTION AND BACKGROUND

Plaintiff Rochelle M. Jones believes that defendants—a combination of her adult son, a crisis services social worker, and several Buffalo Police officers[1]—worked together to have her confined unlawfully in 2015 through an abuse of New York's Mental Hygiene Law. Jones and her husband, James L. Thomas, filed their original complaint on March 21, 2016, alleging various civil-rights violations. An amended complaint followed on May 5, 2016. (Dkt. No. 3.) Chief Judge Frank P. Geraci, Jr. issued a decision on September 11, 2019 that dismissed some of plaintiffs' claims but allowed others to proceed. The Court will not repeat background facts available in the docket and in Chief Judge Geraci's decision. In short, Chief Judge Geraci allowed the following claims to proceed to discovery:

    the Second Claim for a violation of Jones's Fourth Amendment rights against Sherry W. and Buffalo Police Officers John Doe 1 and 2;

    the Third Claim for denial of Jones's liberty without due process against Sherry W. and Buffalo Police Officers John Doe 1 and 2;

    the Fourth Claim for false arrest and imprisonment of Jones against Sherry W. and Buffalo Police Officers John Doe 1 and 2;

    the Eighth Claim for defamation against Harris; and

---

[1] Several other defendants from the original complaint have since been dismissed from the case.

the Eleventh Claim, a derivative spousal claim, against Harris, Sherry W., and Buffalo Police Officers John Doe 1 and 2.

(Dkt. No. 102 at 9.) Chief Judge Geraci addressed plaintiffs' informal request to amend their complaint by deciding that a formal motion would be necessary.

Plaintiffs now have filed a motion for leave to file a second amended complaint. (Dkt. No. 103.) Plaintiffs generally propose two minor amendments and one major amendment. The minor amendments would add more detail to the factual allegations that Jones "suffered severe mental and physical trauma as a result of the incidents alleged." (Dkt. No. 103-1 at 4.) The minor amendments also would delete references to defendants who have been dismissed from the case. (*Id.*) The major amendment concerns plaintiffs' desire to attach liability to the Buffalo Police Department—liability that would be separate from any liability that would be assigned to the individual officer defendants.[2] Plaintiffs want to add "language to clarify the role of Defendant BPD and its liability in this action as it pertains to the Defendant Officers." (*Id.*) Plaintiffs also want to add a new cause of action for "employer liability." Since the proposed new cause of action runs only three sentences long, the Court reprints it here in its entirety:

> Defendant BPD is liable for the actions of their employees, the Defendant Officers, which directly resulted in the removal of Plaintiff Rochelle Jones from her home.
>
> Defendant BPD's employee's negligence or misconduct was done within the scope of their authority as employees of Defendant BPD.
>
> As a result of Defendants' actions, Plaintiff JONES has suffered mental, physical and emotional harm, loss of economic opportunity, loss of income, loss of enjoyment of life, and damage to her reputation.

---

[2] The Court should note that the Buffalo Police Department currently is a named defendant. Chief Judge Geraci had issued an order to show cause at the end of his September 11, 2019 decision requiring plaintiffs to explain why the Buffalo Police Department should remain in the case. After receiving the case referral, the Court decided, for the sake of efficiency, to deem the motion to amend as plaintiffs' response to the order to show cause. (Dkt. No. 105.)

2

(Dkt. No. 103-2 at 41.) As the above language indicates, plaintiffs have not made clear what their theory against the Buffalo Police Department is. The above language sounds like a theory of *respondeat superior* or perhaps negligent hiring or supervision. There is no mention of a federal constitutional violation. More importantly, for reasons explained below, there is no suggestion of a defective policy or practice that would give rise to liability.

The individual officer defendants oppose the motion to amend. The officer defendants note that, to the extent that plaintiffs want to assert federal causes of action, the Buffalo Police Department does not have a legal identity apart from the City of Buffalo and thus cannot be sued. Another problem with the proposed new cause of action, according to the officer defendants, is that 42 U.S.C. § 1983 does not permit vicarious liability. Finally, to the extent that the proposed new cause of action would create liability under state law, the officer defendants point out that the cause of action is too late because plaintiffs did not comply with the requirements of New York General Municipal Law § 50.

In an abundance of caution, the Court is proceeding by way of a Report and Recommendation. Although motions for leave to amend generally are non-dispositive, *see, e.g., Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Palmer v. Monroe Cty. Sheriff*, 378 F. Supp. 2d 284, 289 (W.D.N.Y. 2005) (citations omitted), some case law suggests that the motions take on a dispositive character when they propose new causes of action and are denied. *See Computer Assocs. Int'l v. Simple.com, Inc.*, No. 02CIV2748DRHMLO, 2006 WL 8441407, at *2 (E.D.N.Y. Sept. 30, 2006) (collecting cases).

## II. DISCUSSION

Under the circumstances here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

3

requires." Fed. R. Civ. P. 15(a)(2). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).

Futility is the most serious problem here, in a minor and a major way. The minor way concerns naming the Buffalo Police Department as a separate entity. The Buffalo City Charter establishes the Police as a department within city government. *See* Buff., N.Y., City Charter § 5-1(8) ("There shall be in the city government the following departments . . . Department of police . . . ."), *available at* https://ecode360.com/13551118 (last visited December 5, 2019). The Buffalo Police Department thus cannot be a named defendant separate from the City of Buffalo itself. *Cf. Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (New York Police Department is a non-suable agency of the City of New York per city charter); *O'Brien v. Barrows*, No. 1:10-CV-173, 2010 WL 5300812, at *1 (D. Vt. Dec. 22, 2010) ("With respect to municipal police departments, however, courts have widely held that they are not municipalities, and are not 'persons' within the meaning of Section 1983.") (collecting cases). The minor source of futility is not necessarily fatal to plaintiffs' desire to amend, as they could seek leave to name the City of Buffalo instead of the Buffalo Police Department.

The major source of futility, however, concerns the substance of the proposed new cause of action. The language, as quoted in full above, does not make clear whether plaintiffs would seek liability under federal or state law. To the extent that the proposed new cause of action would fall under federal law, it is deficient. "To maintain a section 1983 claim against a municipality or its

4

agents in their official capacities, a plaintiff must show that the municipality's agents engaged in unconstitutional actions that were visited upon plaintiff pursuant to an official policy or custom." *Katz v. Morgenthau*, 892 F.2d 20, 22 (2d Cir. 1989) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–95 (1978)). Courts have articulated the *Monell* standard in further detail. "The courts have articulated guidelines under which municipal liability may be imposed. These include: (1) an officially promulgated policy sanctioned or ordered by the municipality; (2) a pervasive custom or practice approved of by the municipality or which the municipality is aware or should be aware; (3) a single act taken by the municipal employee who, as a matter of state law, has final policymaking authority with respect to the area in which the action is taken; or (4) where the failure of the municipality to train its employees rises to the level of deliberate indifference to the constitutional rights of others." *Clayton v. City of Kingston*, 44 F. Supp. 2d 177, 183 (N.D.N.Y. 1999) (citations omitted). With respect to allegations about a failure to train or to supervise, the Second Circuit "has identified three requirements before a municipality's failure to train or supervise constitutes deliberate indifference. First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins*, 478 F.3d at 94 (internal quotation marks and citations omitted). None of the details required in the case law appears in the proposed new cause of action. The proposed new cause of action would assign liability to the Buffalo Police Department only because the individual officers acted within the scope of their authority. There is no allegation about training or about policymaking authority. Plaintiffs would not necessarily have to know what

5

policies might have been in place, but the proposed new cause of action offers no details that would allow for a reasonable inference that a defective policy exists. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("The mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (internal quotation and editorial marks and citation omitted); *Donohue v. Manetti*, No. 15-CV-636 (JFB)(GRB), 2016 WL 740439, at *6 (E.D.N.Y. Feb. 24, 2016) (noting that "conclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details" but allowing a *pro se* prisoner to proceed with a *Monell* claim based on the prison's alleged acknowledgment of a defective policy). At best, the proposed new cause of action reads as if plaintiffs want to assert vicarious liability. Vicarious liability would not be permitted under the circumstances. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.") (citations omitted); *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019) ("[W]hile an employer may be liable under Title VII for any discriminatory conduct that can properly be attributed to the employer through agency principles, § 1983 does not permit such vicarious liability."). The proposed new cause of action thus would be futile to the extent that it would fall under federal law.

The proposed new cause of action would fare no better under state law. The language of the proposed new cause of action cites negligence—a tort theory. "In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises." N.Y. Gen.

6

Mun. Law § 50-e(1)(a). Plaintiffs have not pled that they filed a timely notice of claim or received permission to file a late one. *See, e.g., Daniel J. by Ann Mary J. v. New York City Health & Hosps. Corp.*, 571 N.E.2d 704, 706 (N.Y. 1991). Other than citing 28 U.S.C. § 1367, plaintiffs have not cited to any other source of jurisdiction for the proposed new cause of action except for 28 U.S.C. § 2221, which does not exist. (Dkt. No. 103-2 at 2.) *See* Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support."). Under these circumstances, the proposed new cause of action likely would face immediate dismissal. Granting leave to amend thus would be futile.

## III. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends denying plaintiffs' leave to amend. (Dkt. No. 103.)

## IV. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's

decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice."  *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal."  *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).

SO ORDERED.

                                                      __/s Hugh B. Scott_____
                                                      Hon. Hugh B. Scott
                                                      United States Magistrate Judge

DATED: December 12, 2019