UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROCHELLE M. JONES and
JAMES L. THOMAS,

    Plaintiffs,

    v.

SHERRY W., et al.,[1]

    Defendants.
_____

Case # 16-CV-234-FPG

DECISION AND ORDER

## INTRODUCTION

  Plaintiffs Rochelle M. Jones ("Jones") and James L. Thomas ("Thomas") brought an assortment of claims against several defendants relating to the alleged removal of Jones from her home and her confinement to a mental health facility. ECF No. 3. After multiple motions, the only claims that remain are against Defendants Sherry W. ("Sherry"), the Buffalo Police Department ("BPD"), Buffalo Police Department Officers John Doe 1 and John Doe 2 (the "BPD Officers"), and Julian Harris ("Harris"). *See* ECF Nos. 77, 102. These claims, as enumerated in the amended complaint, consist of 1) Jones's claim for the violation of her Fourth Amendment rights against Sherry, BPD, and the BPD Officers, 2) Jones's claim for the denial of her liberty without due process against Sherry, BPD, and the BPD Officers, 3) Jones's claim for false arrest and imprisonment against Sherry, BPD, and the BPD Officers, 4) Jones's claim for defamation against Harris, and 5) Thomas's claim for loss of consortium, derived from Jones's damages in her remaining claims. ECF No. 102 at 9.

---

[1] The Defendants that remain in this action are Sherry W., the Buffalo Police Department, Buffalo Police Officers John Doe 1 and 2, and Julian Harris. All claims against the other parties were previously dismissed. *See* ECF Nos. 77, 102.

1

Presently before the Court are Sherry's motion for summary judgment (ECF No. 149), Harris's motion for summary judgment (ECF No. 151), and BPD and the BPD Officers' motion for summary judgment (ECF No. 154). For the reasons set for below, Sherry's motion is denied, Harris's motion is granted, and BPD and the BPD Officers' motion is granted.

## BACKGROUND[2]

Jones and Thomas were married and living together in Buffalo in March 2015. ECF No. 157-3 ¶¶ 1-3. Harris is Jones's son. ECF 149-2 ¶ 11. In March 2015, Harris called Crisis Services of Erie County ("CSEC") to request a mental health check on Jones, expressing concern over Jones's recent behavior. ECF 149-2 ¶ 20. In response, Sherry, a licensed mental health counselor and CSEC employee, visited Jones's home on March 21, 2015. *Id*. ¶¶ 30, 31.

Sherry was advised going into the visit that Jones had been sleeping poorly, posting on Facebook late at night, and taking Xanax supposedly prescribed to her dog. *Id*. ¶ 31. During the actual visit, Sherry purports to have observed Jones speaking quickly and in a disorganized, grandiose manner. *Id*. ¶ 32. Sherry was subsequently informed that Jones had a gun in her home, and decided to cease the mental health check until police were available to attend as well. *Id*. ¶ 33.

The following day, on March 22, 2015, Sherry received another call from Harris purportedly informing her that Jones had threatened to kill her daughter. *Id*. ¶ 35. Harris also sent CSEC pictures of Jones's Facebook posts and text messages, which Harris believed indicated her mental health was deteriorating. ECF No. 151-3 ¶ 17. Sherry then returned to Jones's home with

---

[2] The Court takes the following facts from the various Defendants' statements of material facts. *See* ECF Nos. 149-2; 151-3; 154. Plaintiffs failed to offer an opposing statement responding to each numbered paragraph, as required by the Local Rules. Local R. Civ. P. 56(a)(2). Accordingly, the Court may deem these facts admitted. *Id*. However, the Court has also considered Plaintiffs' supporting affidavits and its own review of the record in assessing the disputed facts in the instant summary judgment motions.

BPD Police Officers John Doe 1 and John Doe 2. *Id*. ¶ 34. Jones's conduct during this second visit is disputed, but both parties agree that the confrontation escalated and resulted in Sherry, purportedly pursuant to New York State Mental Health Law ("MHL") § 9.45, directing that Jones be transported to Erie County Medical Center ("ECMC") for a mental health evaluation. *Id*. ¶¶ 37, 38; ECF No. 157-1 ¶¶ 32-43.

Prior to the March 21 and 22 mental health checks, Jones's medical records indicated she struggled with mental health and substance abuse issues, including feelings of depression and anxiety, frequent use of unprescribed Xanax, and a substantial amount of alcohol consumption. ECF No. 151-3 ¶¶ 24-26. Her medical records also indicated that after Jones was admitted to ECMC, Thomas told a nurse that she wanted to get discharged as soon as possible so she could kill her child. *Id*. ¶ 43. Jones was ultimately held for approximately two weeks. *Id*. ¶ 42.

Jones subsequently filed suit against Defendants, among other parties. *See* ECF No. 3. On August 3, 2018, this Court dismissed multiple claims on several parties' motions to dismiss. ECF No. 77. On September 11, 2019, this Court again dismissed multiple claims on several parties' motions for judgment on the pleadings. ECF No. 102. Plaintiffs' claims against the remaining Defendants include 1) claims against Sherry for violations of her Fourth Amendment rights, denial of liberty without due process, and false arrest, based on her removal from her home during the March 22 mental health check; 2) claims against BPD and the BPD Officers for their role in her removal from her home during the March 22 mental health check; 3) claims against Harris for defamation based on the alleged statements he made to CSEC prior to both of the March mental health checks; and 4) derivative claims against Defendants for loss of consortium on behalf of Thomas. ECF No. 102 at 9. Discovery has closed, and Sherry (ECF No. 149), Harris (ECF No. 151), BPD, and the BPD Officers (ECF No. 154) have each moved for summary judgment.

**LEGAL STANDARD**

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

**DISCUSSION**

**I.     Claims Against Sherry**

Sherry moves for summary judgment on the grounds that she had probable cause to admit Jones to ECMC pursuant to MHL § 9.45. ECF No. 149-18 at 6-9. This Court finds that there is a genuine issue of material fact as to whether Sherry had probable cause to remove Jones from her home. Accordingly, Sherry's motion for summary judgment is denied.

MHL § 9.45 grants designees of the director of community services the power to send an individual to a hospital for a mental health evaluation when the individual is likely to harm themselves or others. *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 312 (W.D.N.Y. 2018) ("MHL § 9.45 also gives . . . the power to remove someone to a hospital upon a report that the person 'has a mental illness for which immediate care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others.'" (quoting MHL § 9.45)). The MHL

defines "likely to result in serious harm" as "(a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm."  MHL § 9.01.

A designee of the community services director cannot violate an individual's Fourth Amendment rights if the designee has probable cause under the MHL to admit a subject to a hospital for a mental health evaluation.  *See Kusak v. Klein*, No. 11-CV-6557-FPG, 2015 WL 510053, at *5 (W.D.N.Y. Feb. 6, 2015) ("[A]n involuntary civil commitment—such as under the MHL—based upon probable cause does not violate the Fourth Amendment.  Having previously determined that the Plaintiff was properly taken into custody under the MHL based upon probable cause, any Fourth Amendment claim based upon the seizure of the Plaintiffs person fails." (internal citation omitted)); *Kaplan v. Cty. of Orange*, 528 F. Supp. 3d 141, 162 (S.D.N.Y. 2021) ("[I]n the context of an involuntary hospitalization, a seizure does not violate the Fourth Amendment if it is based on probable cause."); *Fisk v. Letterman*, 501 F. Supp. 2d 505, 526 (S.D.N.Y. 2007) ("An involuntary hospitalization does not violate the Fourth Amendment if it is based upon probable cause, meaning that there are reasonable grounds for believing that the person seized is dangerous to herself or to others." (internal quotations omitted)).

"[A] showing of probable cause in the mental health seizure context requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior." *Kusak*, 2015 WL 510053, at *5 (quotations omitted).  Furthermore, "to determine whether a mental-health seizure is justified by arguable probable cause, a court must review the specific observations and information available to the officers at the time of a seizure." *Myers v. Patterson*,

819 F.3d 625, 633 (2d Cir. 2016). Accordingly, Sherry must establish that there is no reasonable dispute, based on the information available to her at the time she allegedly removed Jones from her home, that she had probable cause to act under MHL § 9.45.[3]

The Court finds that Sherry has not met this standard. Sherry bases her probable cause determination on Jones' "paranoid, agitated, and angry" state during the March 21 and 22 mental health checks. ECF No. 149-18 at 8-9. Sherry specifically claims that Jones grew agitated during the visits, screamed about killing, screamed about police trying to kill her, threatened to call the President of the United States, and called for her neighbors. *Id*. at 8. She also states that Sherry was aware of Harris's call regarding Jones's mental health, in which he stated that Jones was a danger to herself and others, threatened to kill her daughter, and had a gun in her house. *Id*.

However, Jones disputes this account of her actions during Sherry's visits to her home. ECF No. 158 at 7. Jones claims that she acted perfectly reasonably in response to Sherry's visit, and that any alarmed behavior was merely a reasonable reaction to armed police officers entering her home. *See* ECF No. 157-1 ¶¶ 31, 36-39. Thomas, allegedly present during the visit, also claims Jones acted reasonably. ECF No. 157-3 ¶¶ 4, 5, 8. There is a dispute of fact concerning Jones' behavior during the March 21 and 22 mental health checks.

The only undisputed evidence Sherry has proffered in support of the probable cause finding are the pre-visit statements from Harris about Jones's mental health. However, probable cause to force a mental health evaluation on an individual cannot be based solely on allegations in a call requesting a mental health check that is only corroborated by disputed testimony regarding a

---

[3] Jones also brings a false arrest claim under state law against Sherry for the same conduct as her § 1983 claim. ECF No. 3 ¶¶ 235-37. Probable cause to execute an arrest is also a complete defense to New York false arrest claims. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983.") (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). Accordingly, Jones' false arrest claim under state law is analyzed under the same probable cause standard as her other claims against Sherry.

plaintiff's behavior. *See Kerman v. City of N.Y.*, 261 F.3d 229, 240-41 (2d Cir. 2001). In *Kerman*, the Second Circuit reversed a grant of summary judgment, finding a reasonable dispute as to whether the defendants violated the plaintiff's Fourth Amendment rights by forcing him to undergo a mental health evaluation pursuant to MHL § 9.41. *Id*. The District Court's decision was based on 1) a 911 call asserting that the plaintiff was dangerous, and 2) disputed testimony about the plaintiff's behavior after the police arrived. *Id*. The Second Circuit found that:

> "[It is] significant that the police failed to corroborate the gravamen of Landau's 911 call; the officers never found a gun. Also, in contrast to the description given by Landau, Kerman claims that he acted in a calm, if irritated, manner once he realized what was going on. Furthermore, the officers deliberately ignored two opportunities to confirm the seriousness of Kerman's condition . . . . [T]he police may have been entitled to hospitalize Kerman if his conduct or the condition of his apartment demonstrated a dangerous mental state. The police claim that Kerman was ranting, screaming and acting unstable. In addition, the police portray Kerman's apartment as an Augean stable. Kerman disputes these claims, contending that he was calm during most of his encounter with the police and that his apartment was, at worst, untidy. At this stage we must credit Kerman's version of the facts . . . . According to Kerman, the police not only failed to reasonably investigate his mental state, they also grossly misjudged the situation as it unfolded before them.

*Id*. at 240-41. Here, as discussed above, Jones's behavior after police arrived is clearly in dispute. Accordingly, this Court cannot find probable cause as a matter of law based solely on Harris's call.

Therefore, the Court finds that there is a dispute of fact as to whether Sherry had probable cause to admit Jones to ECMC under MHL § 9.45, and it denies her summary judgment motion with respect to Jones's claims.[4] Furthermore, because Sherry offers no grounds for summary

---

[4] Sherry's additional arguments relating to Jones's false arrest claim are unavailing. The record clearly indicates that Sherry acted intentionally when she decided to remove Jones from her home pursuant to MHL § 9.45. ECF No. 149-2 ¶ 38 (stating Sherry determined that the criteria of MHL § 9.45 were met and directed police to remove Jones from her home). Further, Jones's vehement protests against her removal indicate there is at least a dispute as to whether she was conscious of her confinement and did not contest it. *Id*. ¶ 36. Accordingly, the Court denies summary judgment with respect to these additional arguments.

judgment against Thomas' claim besides that it is derivative of Jones's claims, Sherry's motion is denied with respect to Thomas' claim as well.

## II. Claims Against Harris

Jones's defamation claim against Harris is based on four alleged statements he gave to representatives of CSEC. ECF No. 3 ¶ 252. These statements are 1) that Jones took Xanax prescribed for her dog, 2) that Jones intended to kill her daughter, 3) that Jones said she was Harriet Tubman, and 4) that Jones consumed large amounts of alcohol. ECF No. 77 at 18. Harris moves for summary judgment against these claims on the grounds that each of the alleged defamatory statements are substantially true. ECF No. 151-1 at 10.

To state a claim for defamation, a plaintiff must allege four elements: the defendant (1) made a false statement about the plaintiff; (2) published it to a third party without authorization or privilege; (3) with fault amounting to at least negligence; (4) that constitutes defamation *per se* or causes special damages. *Collins v. Travers Fine Jewels, Inc.*, No. 16-CV-03780 (SN), 2017 WL 1184305, at *2 (S.D.N.Y. Mar. 29, 2017) (citing *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010)). Statements that are "substantially true" are not actionable under New York law. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 243-44 (2d Cir. 2017). A statement is substantially true "if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id*.

It cannot be reasonably disputed that each of the statements Harris made to CSEC are at least substantially true. Accordingly, Harris's summary judgment motion is granted.

### a. Jones's Use of Xanax

Jones alleges that Harris told CSEC that "she had been self-medicating with her dog's Xanax." ECF No. 3 ¶ 252. There is indisputable evidence that Jones was in fact abusing Xanax.

8

Her medical records reflect that throughout January and February of 2015, predating Harris's contact with CSEC, Jones sought out and used Xanax that was prescribed to other people, repeatedly asked healthcare providers for Xanax, and threatened to start abusing alcohol if she was not given more Xanax, all while doctors noted that she should not be given Xanax. *See* ECF No. 151-15 at 18 (Jones reported that "she got 2 'nerve pills' from her father (she does not know what they are) as well as 4 [X]anax tablets from her mother. She reports that when she was not able to obtain these she began drinking bourbon to cope . . . . Rochelle asks for [X]anax several times throughout the interview."); *id.* at 19 ("Rochelle is asking specifically for [X]anax. Xanax is not the best choice for Rochelle at this time. She has a history of alcohol abuse . . ."); *id.* at 20 ("Over the past few weeks [R]ochelle has made several provocative comments attempting to obtain [X]anax by making such statements as [']if you don't give it to me I will drink[.]'"); *id.* at 25 ("Rochelle left a message stating that . . . she had been waking up sweating in the night and that she felt she was not coping without Xanax . . . . I returned the call . . . . She then stated 'when I don't have [X]anax I will drink.'"); *id.* at 29 ("Rochelle called and left a message stating that she came back from a horrible vacation. She asked for Xanax to address anxiety regarding a job interview."); *id.* at 49 ("She feels better this morning as she got her 83 year-old mother to get a prescription of Xanax from her PCP. She agrees that this is technically illegal but felt she had to do it in order to function.").

While Harris has not marshalled undisputed evidence that Jones was abusing her dog's Xanax specifically, this distinction is inapposite. Harris must only establish that his alleged statements were "substantially true." *Tannerite Sports*, 864 F.3d at 243. Here, there would be no "different effect on the mind of" any CSEC employee if he or she were told that Jones was abusing

9

Xanax prescribed to others generally versus abusing Xanax prescribed to her dog specifically. *Id*. Accordingly, Harris has produced evidence that her statements were substantially true.

Plaintiff Jones does not attempt to rebut or explain this evidence in her opposition to Harris's summary judgment motion. ECF No. 161. She denies that she ever specifically "took Xanax prescribed to [her] dog," but does not deny abusing Xanax prescribed to others, and she offers no explanation of the apparent admissions in her medical records. ECF No. 161-2 ¶ 29. She merely asserts that her conduct prior to the March 21 and 22 mental health checks is irrelevant. *Id*. ¶ 40. She also fails to deny the allegations in Harris's statement of undisputed facts relating to her Xanax use. *Compare* ECF No. 151-3 ¶¶ 24-26, *with* ECF No. 161 (not submitting any opposition to Defendant Harris' statement of undisputed facts). Therefore, she has failed to effectively dispute that Harris's statements were substantially true.

### b. Jones's Intent to Kill Her Daughter

Jones further alleges that Harris told CSEC that she "intended to kill her daughter" before her daughter could kill her. ECF No. 3 ¶ 252. Again, Harris has offered multiple uncontested pieces of evidence indicating this alleged statement was true. Harris, during his deposition, described a call with Jones during which she stated she intended to kill her daughter. ECF No. 151-5 at 129:14-130:12. Jones's medical records also indicate Thomas told a nurse that "[h]er son/daughter tried to shoot me once, and all my wife is thinking is that she wants to get discharged tomorrow so she can use her guns and kill her son/daughter." ECF No. 151-17 at 158. Jones has also left voicemails for Harris threatening to kill him on multiple other occasions as well. *See* ECF Nos. 151-10; 151-11; 151-12; 151-13.

In response to these allegations, Jones admitted in her deposition that "[i]t's possible" she told someone she would kill her daughter. ECF No. 151-7 at 151:9-13. She also fails to refute

10

Harris's allegations in her opposition to his summary judgment motion. ECF No. 161. In her opposition's supporting affidavit, she specifically addresses Harris's Xanax and Harriet Tubman statements, but does not address her alleged intent to kill her daughter. ECF No. 161-2 ¶¶ 28-30. She also, as stated above, offers no response to Harris's statement of undisputed facts. *See generally* ECF No. 161. The closest she comes to disputing this issue of fact is by denying that she acted violently during the March 21 and 22 house visits. ECF No. 161-2 ¶¶ 39, 40. However, this does not effectively dispute the specific evidence offered by Harris that she threatened to kill her daughter on other occasions. Accordingly, Harris has offered undisputed evidence that Jones stated she intended to kill her daughter, making this allegedly defamatory statement not actionable.

### c. Jones's Statement Regarding Harriet Tubman

Jones alleges that Harris told CSEC that she had "publicly stated that she was Harriet Tubman." ECF No. 3 ¶ 252. However, the undisputed evidence indicates Harris merely told CSEC that Jones *compared herself* to Harriet Tubman, and not that she believed she *was* Harriet Tubman. Harris has submitted in support of his motion an email he sent to CSEC from March 21, 2015, transmitting a Facebook post and text messages he received from Jones. ECF No. 151-22. This clearly demonstrates that Harris was merely transmitting Jones's actual assertions regarding Harriet Tubman to CSEC, as she herself articulated them.

In response, Jones offers no evidence that Harris told CSEC she thought she was Harriet Tubman. While she does discuss the different implications of comparing oneself to Harriet Tubman versus actually claiming to be Harriet Tubman in her opposition memorandum, she fails to cite any evidence that Harris actually stated that Jones thought she was Harriet Tubman. ECF No. 161 at 9. Likewise, her supporting affidavit merely claims that she was comparing herself to Harriet Tubman, and contains no allegations that Harris told CSEC otherwise. *See* ECF No. 161-

11

2 ¶¶ 28-30. Therefore, there is no reasonable dispute that Harris merely told CSEC that Jones was comparing herself to Harriet Tubman, which is indisputably true. Accordingly, this alleged defamatory statement is not actionable.

### d. Jones's Consumption of Alcohol

Lastly, Jones alleges that Harris told CSEC that she had been "drinking a lot lately." ECF No. 3 ¶ 252. It is undisputed that Jones was drinking a substantial amount in the time leading up to her health check on March 22, 2015. Jones's medical records state in multiple different entries that she was drinking to cope with her inability to find Xanax, and sometimes drank as much as three bottles of bourbon per week. ECF No. 151-15 at 18 ("She reports that when she was not able to obtain [Xanax] she began drinking bourbon to cope."); *id.* at 19-20 ("She has a history of alcohol abuse and it is currently unclear the extent to which she is actually drinking. Today she reports drinking a large bottle of bourbon 2-3 times per week."); *id.* at 62 ("She came seeking Xanax because she had run out and began drinking pretty heavily. She shares that she drank a large bottle of 100 proof bourbon in two days. She recognized this as problematic and has not drank since 7/8.").

Jones again fails to dispute these allegations in her opposition papers. No details regarding her alcohol consumption are mentioned in her opposition memorandum. *See* ECF No. 161. In her opposition's supporting affidavit, she specifically addresses Harris' Xanax and Harriet Tubman statements, but does not deny that she had been "drinking a lot" leading up to March of 2015. *See* ECF No. 161-2 ¶¶ 28-30. She even admits in her supporting affidavit that, "from time to time," she would drink to the point of intoxication and "on several occasions become verbally abusive." *Id*. ¶ 41. This verbal abuse appears to include her voicemails left for Harris, in which she threatened to kill him, since Jones admitted in her deposition that these were left while she was

intoxicated. ECF No. 151-7 at 144:22–145:6. Also in her deposition, she asserts that she overstated her alcohol use to her healthcare providers in an attempt to get them to prescribe her Xanax. *Id*. at 142:10–143:20; 189:19–190:3. However, this does not even refute that she was in fact "drinking a lot" leading up to her mental health evaluation. Even if it did, this explanation, which Jones herself does not even cite to or rely on in her opposition papers, is insufficient to create a reasonable dispute of fact, considering Jones's admission that she drinks to the point of becoming verbally abusive and her failure to directly dispute Harris's drinking allegations.

Accordingly, Harris's summary judgment motion is granted with respect to these allegedly defamatory statements as well. Because Thomas's claim is purely derivative of Jones' claims, summary judgment is granted with respect to his claim as well. *See Wright v. City of Ithaca*, 633 F. Appx. 63, 66 (2d Cir. 2016).

### III. Claims Against BPD and the BPD Officers

The Court grants BPD's summary judgment motion on the grounds already stated on the record. In its September 11, 2019 Decision and Order and Order to Show Cause, this Court ordered Plaintiffs to show cause as to why the Court should not terminate BPD as a defendant in this case. ECF No. 102. Plaintiffs then filed a motion seeking leave to file a second amended complaint to include additional factual allegations relating to BPD, which the court treated as Plaintiffs' response to the order to show cause. ECF No. 105. Magistrate Judge Hugh B. Scott issued a report and recommendation denying this motion. ECF No. 107. This Court adopted the report and recommendation in its entirety. ECF No. 108. Therefore, Plaintiffs have failed to show cause as to why BPD should not be terminated as a defendant. Accordingly, for the reasons stated in this Court's September 11, 2019 Decision (ECF No. 102) and Magistrate Judge Scott's report and

recommendation (ECF No. 107), BPD's motion for summary judgment is granted and all claims against BPD are dismissed.

The Court also grants the BPD Officers' summary judgment motion because Plaintiffs have failed to properly serve these defendants. Rule 12(b)(2) requires dismissal of claims against John Doe defendants who remain unidentified at this stage of a case's proceedings. *See Jackson v. Cnty. of Erie*, No. 17-CV-396S, 2020 WL 5642277, at *3 (W.D.N.Y. Sept. 22, 2020) ("Courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials. But where a plaintiff has had ample time to discover the identities of the unnamed officials and has not yet named or served them, dismissal without prejudice is proper." (citing cases)); *Lazo v. United States*, No. 06 CIV. 5438 (JCF), 2007 WL 2948342, at *6 (S.D.N.Y. Oct. 9, 2007) ("Insofar as the Amended Complaint names as defendants John Does 1-6, the plaintiff has never identified or served these parties, and the claims against them must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.").

Here, discovery has closed. Plaintiffs have accordingly been given ample opportunity to learn the identities of these officers and serve them, but have failed to do so. Therefore, the BPD Officers' motion for summary judgment is granted. Furthermore, because Thomas's claim is purely derivative of Jones's claims, summary judgment is granted with respect to his claim as well. *See Wright v. City of Ithaca*, 633 F. Appx. 63, 66 (2d Cir. 2016) (citing *Griffin v. Garratt-Callahan Co.*, 74 F.3d 36, 40 (2d Cir. 1996)).[5]

---

[5] Because the Court finds that Plaintiffs' claims against Harris, BPD, and the BPD Officers should be dismissed for the aforementioned reasons, it does not reach the remaining arguments in these respective Defendants' motions.

## CONCLUSION

For the foregoing reasons, Sherry's motion for summary judgment (ECF No. 149) is DENIED; Harris's motion for summary judgment (ECF No. 151) is GRANTED and Plaintiffs' claims against him are dismissed with prejudice; and BPD and the BPD Officers' motion for summary judgment (ECF No. 154) is GRANTED and Plaintiffs' claims against them are dismissed without prejudice.  The Clerk of the Court is directed to terminate these defendants as parties to this action.  By separate order, the Court will schedule a status conference to hear from the parties about the progress of this action.

    IT IS SO ORDERED.

Dated: December 12, 2022
       Rochester, New York

                                      FRANK P. GERACI, JR.
                                      UNITED STATES DISTRICT JUDGE
                                      WESTERN DISTRICT OF NEW YORK